# SEALED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

FILED
DISTRICT OF NEBRASKA
AT

AUG 2 7 2003

Gary D. McFarland, Clerk
By_____Deputy

)
)
In the Matter of the Search of :           )              8:02MJ143
)
The Residence of Pamela Griffin, 5115   )
)
Erskine Street, Omaha, Nebraska.      )      **MEMORANDUM AND ORDER**
)                           **(SEALED)**
)

Before the court is an appeal of an Order by United States Magistrate Judge Thomas D. Thalken. The court has reviewed the record in this case, including the briefs of the parties, the transcript of proceedings before Magistrate Judge Thalken, and the stipulation of the parties filed on August 5, 2003. For the reasons herein, the court will affirm Magistrate Judge Thalken's Order.

## I. BACKGROUND

Pamela Griffin is an attorney who resides in Omaha, Nebraska. She was formerly a partner in an Omaha law firm and now works in-house for a local corporation. She is married to Robert Griffin, an inmate in California's penal system and an alleged member of the Aryan Brotherhood.

As part of an investigation of Aryan Brotherhood members, including Robert Griffin, agents of the Bureau of Alcohol, Tobacco, and Firearms (ATF) executed search warrants on residences nationwide on October 17, 2002. Among the residences searched was Pamela Griffin's, 5115 Erskine Street, Omaha, Nebraska.

Before executing the warrant, ATF was aware that Pamela Griffin's possessions could include materials protected by the attorney-client and work-product privileges. Accordingly, the sealed search warrant and supporting affidavit included a memorandum



outlining a privilege review procedure ATF agents were to follow when conducting the search of Griffin's home. The procedure provided that searching ATF agents, who would not participate further in the investigation, would conduct an initial review of seized documents for potential privilege, reviewing items for things like attorney names or legal letterhead. If an agent encountered a document which was potentially privileged, the agent was to conduct "only a limited further review" of the document to determine if it fell "within the scope of the investigation . . . ." If the document appeared to fall within the scope of the investigation, the agent was to stop reviewing the document, seal it, and mark it "potentially privileged."

During this initial review process, a designated "privilege" Assistant United States Attorney ("AUSA") was to answer the reviewing agents' questions regarding privilege. According to the memorandum, the "privilege AUSA" would be "walled off" from any subsequent investigation and/or prosecution related to the search. Once agents had conducted initial review, they were then to send the "potentially privileged" documents to the privilege AUSA, who, without reviewing or unsealing the sealed packages, would forward the items to a court-appointed special master in California who would make the final determination regarding privilege or waiver thereof.

During execution of the warrant for 5115 Erskine Street, ATF agents encountered numerous documents. The search team leader, ATF agent James Slosson, testified that Griffin told him that located upstairs she had some 20-years' worth of correspondence with her husband. Many of the documents were in boxes, and due to sheer volume, ATF agents decided to simply take, for further review at the ATF local office, each box which contained material referencing Robert Griffin. According to Agent Slosson, the agents

2

would look in a box, and if it contained correspondence either to or from Robert Griffin, they would seize the entire box. An inventory completed at the scene indicates the ATF took 44 boxes of documents, two computers, and related computer hardware and software.[1]

Following the review procedure outlined above, an ATF agent conducted review of the first box of materials. Agents have not reviewed the remaining documents, however, because Griffin asked for and received a court order granting a stay of further action.

Proceeding under Fed. R. Crim. P. 41(e) and the court's general equity jurisdiction, Griffin made two additional requests. First, Griffin moved for an *in camera* opportunity to designate certain documents as privileged and to compel the government to return the documents. She attached her own affidavit to the motion, which states, *inter alia*, that she has represented her husband "in a number of post-conviction, administrative, and legal actions in the state of California," and that many of the materials seized by ATF agents are either attorney-client and work product materials, or alternatively, private communications between Griffin and her husband which are protected by an unidentified marital privilege. She further indicated that many of the documents are necessary to her ongoing legal defense of her husband.

Second, Griffin moved for an order unsealing the affidavit supporting the search warrant on the theory that the search warrant itself did not authorize the ATF to take certain items. She argued that without the supporting affidavit, she could not tell if the search documents, taken together, described the items to be seized with sufficient particularity and

---

[1] Ultimately, agents downloaded the contents of Griffin's computer hard drives and returned the computers.

alleged the exceptions necessary to seize otherwise privileged materials.

In his Order on Griffin's motion for return of property and to unseal the supporting affidavit, Magistrate Judge Thalken denied Griffin's request to unseal the supporting affidavit,[2] and found that Griffin was not entitled to the return of her documents. Magistrate Judge Thalken did hold, however, that Griffin should have rights to copy, at her expense, any seized materials necessary to her representation of her husband in ongoing post-conviction and administrative matters. Griffin timely appealed Magistrate Judge Thalken's order to this court.

Although Griffin's appeal originally objected to the privilege review procedure approved by Judge Thalken and requested that this court impose an alternative method for reviewing the seized documents, the parties' briefing indicated possible agreement on certain issues and the court directed the parties to work out what they could. Accordingly, the parties have reached a limited agreement modifying the review procedure since the filing of Griffin's appeal. The parties stipulate that, under supervision by a government agent, Griffin or her attorney may review and designate the seized documents for privilege.[3] After Griffin has designated the documents, such documents will ultimately be

---

[2] Magistrate Judge Thalken did so on the ground that unsealing the affidavit could compromise an ongoing criminal investigation into the Aryan Brotherhood.

[3] The stipulation provides: "The petitioner, Ms. Pamela Griffin, or her attorney, will be allowed to review the property taken from her residence for the purpose of designating documents for which she claims a privilege on behalf of Defendant Robert Griffin. Such a review will occur in the presence of a government agent who can ensure that any person reviewing the documents does not alter, remove, or destroy any of the documents being reviewed."

4

sent to the Special Master involved in this case for further privilege review.[4]  Finally, the parties have stipulated that, during Griffin's review, those documents that the supervising government agent agrees are not responsive to the search warrant will be returned to Griffin.[5]

## II. ANALYSIS

Because the parties' stipulation gives Griffin the opportunity to designate documents as privileged, the stipulation resolves Griffin's concerns about use of ATF agents for initial privilege designations and renders Griffin's objection to that portion of the original review procedure moot.[6] *Cf.* United States v. Search Of Law Office, Residence, And Storage Unit of Alan Brown, 2003 WL 21766705 at *7 (5th Cir. July 31, 2003) (finding no irreparable harm where attorney failed to make "any effort to identify specific privileged documents in the hands of the government or provide a legal basis for asserting a particular privilege."); In re Search of 636 South 66th Terrace, 835 F. Supp. 1304, 1306 (D. Kan. 1993) (finding that government seizure of attorney-client communications generates irreparable injury to the possessor of the privilege).  Nevertheless, the parties' stipulation is far from

---

[4] The stipulation provides: "Documents that the Petitioner designates as privileged will be further reviewed for privilege by Special Master Julie Fox Blackshaw, who has been appointed by the Central District of California."

[5] The stipulation provides: "Documents the government agent agrees are not responsive to the search warrant will be returned to Mrs. Griffin."

[6] This is not to say that Griffin's other objections to the review procedures are moot. Moreover, the Government suggests in its brief that Griffin's objections to review by ATF agents are moot because the agents have already reviewed the documents in question. That should not be the case. While agents did review some documents both during the initial search and during review of the first box of materials, the Government was ordered to cease the review process pending this court's ruling. There are some 43 other boxes of documents which should still require initial review for privilege.

comprehensive, and they still contest virtually everything else. In letters to the undersigned shortly after the stipulation was filed, the parties indicate that they still contest (1) whether the potentially privileged documents should be sent directly to the special master or may go through the walled-off "privilege AUSA"; (2) whether the Government or Griffin should be allowed to retain the originals; (3) whether the review of <u>unprivileged</u> documents should occur in Nebraska (by a member of the local U.S. Attorney's Office or ATF) or in California (by a member of the Los Angeles U.S. Attorney's Office or ATF); and (4) whether Griffin or the Government should bear the cost of making photocopies of the documents the Government ultimately retains. Griffin's appeal also challenges Magistrate Judge Thalken's refusal to allow her access to the sealed affidavit supporting the search warrant.

To the extent Judge Thalken's Order addresses the issues contested by the parties, the order is affirmed.[7] Pre-indictment requests for return of property are a specific and extraordinary injunctive remedy governed by the general equity jurisdiction of the federal court. <u>Matter of Search of 4801 Fyler Avenue</u>, 879 F.2d 385, 387 (8th Cir. 1989). When "asked to employ its historic powers as a court of equity," <u>Fair Assessment in Real Estate Assn., Inc. v. McNary</u>, 454 U.S. 100, 120 (1981) (Brennan, J., concurring), the court must first determine if the traditional predicates for equity jurisdiction exist. Equity jurisdiction,

---

[7] Magistrate Judge Thalken entered his findings as an Order, which may not be set aside unless clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A), NELR 72.3(d). However, motions for return of property are essentially requests for injunctive relief, and when the movant is not the subject of criminal proceedings, as here, the court's denial of the motion to return property is a final appealable order. <u>DiBella v. United States</u>, 369 U.S. 121, 131-32 (1962). Accordingly, entry of a Report and Recommendation, which this court reviews *de novo*, may have been the appropriate course. *See* 28 U.S.C. § 636(b)(1)(C), NELR 72.4. Neither party raised this point, and in any event, even using *de novo* review, the court generally concurs in the outcome reached by Magistrate Judge Thalken.

in turn, hinges on the movant's demonstration of irreparable harm and lack of an adequate remedy at law. *See* Black Hills Institute of Geological Research v. United States Dept. of Justice, 967 F.2d 1237, 1239 (8th Cir. 1992); In Re Search of Premises Known as 6455 South Yosemite, Englewood, Colo., 897 F.2d 1549, 1556-57 (10th Cir. 1990). In addition, courts have identified a number of other factors to consider, including whether the movant has an individual interest in and need for the property and whether government agents acted in callous disregard of the Fourth Amendment.[8]

After noting that Griffin cannot demonstrate callous disregard for the Fourth amendment because the ATF agents acted in good faith pursuant to a judicially-approved warrant, Magistrate Judge Thalken ultimately concluded that Griffin had demonstrated sufficient harm and lack of an adequate remedy to at least obtain access to her documents and the right to photocopy them. When considered with the parties' agreement that Griffin may now designate documents for privilege, Magistrate Judge Thalken's Order strikes a reasonable balance between Griffin's concerns about privilege, Griffin's asserted need to

---

[8] Callous disregard appears most relevant when the movant also seeks suppression of the seized information in future proceedings. *See* Black Hills Institute, 967 F.2d at 1239-40 (noting that appellants did not seek exclusion of the property, and therefore the inquiry was not into the legality, but the reasonableness, of the seizure, and further noting that an interest in and need for property combined with lack of an adequate remedy at law was sufficient to "support an order granting equitable relief."); In re the Matter of the Search of Kitty's East, 905 F.2d 1367, 1371 (10th Cir. 1990) (concluding that after the 1989 amendments to Rule 41(e), a movant need not demonstrate callous or outrageous government conduct to obtain relief); *cf.* United States v. Lamplugh, 956 F.Supp. 1204, 1206 (M.D. Pa. 1997) (stating "[t]he Advisory Committee Notes to the 1989 amendment suggest merely that "reasonableness under all circumstances must be the test when a person seeks to obtain the return of property . . . . "); *see also* Mr. Lucky Messenger Service Inc. v. United States, 587 F.2d 15, 16-17 (7th Cir. 1978) (noting that absent a request that the evidence seized be excluded from an upcoming trial, the circumstances of seizure are irrelevant).

access the documents, and the Government's interest in reviewing and retaining the documents responsive to the warrant. *See* Black Hills Institute, 967 F.2d at 1240 (noting that "when the owner of seized property seeks injunctive relief for the return of property while the case remains in the investigative stage (i.e. before criminal charges are brought), the district court must also balance the government's interest in retaining the property against the owner's right to get it back.").

Apart from the parties' stipulation, the court is unwilling to tinker with Magistrate Judge Thalken's Order which generally approves the review procedure as originally outlined. First, both Griffin's objection to the "privilege AUSA" and the Government's insistence that a privilege AUSA be involved in the review procedure are perplexing. According to the original procedure outlined in the memorandum attached to the search warrant, once documents are marked potentially privileged (by Griffin given the stipulation), they are to be sealed and forwarded first to the "privilege AUSA", who, without reviewing or unsealing the sealed packages, forwards them to the Special Master. On this procedure, the "privilege AUSA" is both irrelevant and harmless, and Judge Thalken's refusal to eliminate the privilege AUSA is not error.

Second, Magistrate Judge Thalken's Order gives Griffin the opportunity to make necessary copies, and Griffin's desire to possess original documents for the "integrity" of her files does not override the government's forensic interest in retaining originals during its investigation. *See* Ramsden v. United States, 2 F.3d 322, 325-26 (9th Cir. 1993) (recognizing that the movant failed to establish that copies of the documents would not fulfill his business needs.). Also, given that Griffin is not entitled to outright return of her property, Magistrate Judge Thalken's decision to impose copy costs on Griffin was

8

permissible. The Government has no particular obligation to give Griffin duplicate copies of documents when it has legitimately seized the documents, Griffin has access to the documents, and there is no competent evidence that the documents will be lost or destroyed. *See, e.g.,* Premises Known and Described as 55 West 47th Street, Suites 620 and 650, New York, New York v. United States, 712 F.Supp. 437, 441 (S.D.N.Y. 1989) ("Rule 41(e) mandates that the Government either return or retain property; it does not obligate the Government to furnish copies of the seized property, much less pay for such copying."). Moreover, the court notes that it is Pamela Griffin who seeks copies, not her husband. To the extent Griffin's husband is indigent and requires certain documents for his current defense, he can make application in the court where he is indicted for the necessary materials.[9]

Third, Magistrate Judge Thalken's decision to leave the warrant sealed was appropriate. Although a movant seeking return of property should typically have access to a supporting affidavit, the ongoing prosecution in this case and the sensitive information contained in the affidavit justify nondisclosure. Moreover, in the court's view, Griffin's potential arguments regarding Fourth Amendment violations are weak. The warrant and supporting affidavit provide probable cause to search, recognize the concerns which attach to searching the home of an attorney, and outline a generally reasonable method for

---

[9] In fact, the body of Magistrate Judge Thalken's Order notes that Griffin only demonstrated entitlement to equitable relief on a limited range of documents necessary to her husband's ongoing representation in matters unrelated to the present criminal prosecution. The Order nevertheless gives Griffin the right to copy retained documents without limitation, and the Government has not appealed that finding. By placing the copy costs on Griffin's shoulders, Magistrate Judge Thalken's Order gives Griffin an incentive to copy only those documents which she really needs.

preserving privilege. The warrant and affidavit were reviewed and approved by a neutral and detached magistrate, and the ATF agents executing the warrant were entitled to rely upon it in good faith.

Fourth, the parties recognize that there are a number of documents which Griffin will not designate as privileged, and of those documents, the Government concedes a portion is potentially not "responsive" to the warrant.   The parties dispute where the "responsiveness" review should occur.  In a letter to the undersigned, the Government apparently wants to ship the 44 boxes of documents for review "in Los Angeles by any attorney employed by the U.S. Attorney's Office, including a member of the prosecution team, or by an agent from the ATF."  Predictably, Griffin requests review in Omaha, Nebraska.

The location of review is a logistical matter that Magistrate Judge Thalken did not explicitly address. He did, however, impose a rather short time-frame for the Government to complete its review of the documents, ordered the Government to return all documents not falling within the scope of the warrant, and gave Griffin the "opportunity to copy all documents the government will retain." The Government did not appeal this ruling, and the court will not disturb it.  The court will likewise impose a relatively short time-frame for the Government to complete its review of those documents Griffin does not designate as privileged, and will order that the Government give Griffin reasonable opportunity to make copies and return items not responsive to the warrant.

Furthermore, the particular location of the "responsiveness" review is of little moment if the Government conducts its "responsiveness" review promptly and gives Griffin an opportunity to copy those documents which the Government will retain.  It seems that

10

review in Nebraska is most efficient course, given parties' stipulation and the fact the documents are currently in Nebraska.[10]  Nevertheless, Magistrate Judge Thalken's Order granted Griffin specific and limited equitable relief, not a license to micromanage the logistics of a Government investigation.  If the Government plans to ship the unprivileged documents to Los Angeles for review and then return them to Omaha for Griffin to copy, that is the Government's prerogative.   Griffin raises unsubstantiated concerns about loss or destruction of the documents, but she has clearly not proven that irreparable harm will befall her if the documents are promptly reviewed elsewhere.[11]

Finally, the parties' letters to the undersigned raise a number of issues collateral to this appeal, including who Griffin can take with her for privilege review, whether Griffin can employ a particular copy service, and whether the documents should be bates-stamped. These matters were not presented to Magistrate Judge Thalken and are not properly before this court.  If the parties cannot resolve these matters, they are directed to contact Magistrate Judge Thalken, with the caveat that frivolous requests or those intended merely

---

[10] The parties stipulate that Griffin can have back those documents which a Government agent agrees are not responsive to the warrant.  Thus, the most efficient course would be a simultaneous Government review of documents once Griffin has passed them for privilege.  If the agent believes the document is not covered by the warrant, Griffin can have it back; if the agent believes the document is covered by the warrant, Griffin can copy it at her expense.

[11] The court notes that the Government's position on this matter is also somewhat disingenuous. Despite allowing Griffin to designate documents for privilege, on other portions of the review procedure (e.g., the involvement of the privilege AUSA), the Government has insisted that it adhere to the procedures outlined in the memorandum attached to the warrant and affidavit. The memorandum clearly contemplates local review by searching ATF agents. According to the memorandum, searching ATF agents were supposed to conduct the "responsiveness" review immediately: "The searching agent (without the involvement of the case agent) will be responsible for making an initial determination of whether a particular item (1) falls within the scope of the warrant . . . ."

for the purpose of delay may meet with sanctions.

### III. CONCLUSION

IT IS ORDERED:

(1)     Magistrate Judge Thalken's Order dated February 4, 2003, is affirmed as modified herein;

(2)     Pursuant to the parties' stipulation, Pamela Griffin shall have until Friday, September 12, 2003, to designate seized documents for privilege;

(3)     The Government shall have until Friday, September 5, 2003, to determine which documents not designated for privilege are nevertheless responsive to the warrant;

(4)     The Government shall return all documents not responsive to the warrant by Friday, September 26, 2003; and

(5)     Pamela Griffin shall have until Friday, October 17, 2003, to copy, at her expense, those documents which the Government intends to retain.

DATED this 27th day of August, 2003.

BY THE COURT:

THOMAS M. SHANAHAN
United States District Judge

**SEALED**

12